1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    EASTERN DISTRICT OF WASHINGTON

7   CHAD M. CARLSEN and SHASTA      )
    CARLSEN, husband and wife, et al.,  )   NO. **CV-09-55-LRS**
8   and BARBARA HULSE; each         )
    individually and on behalf of a     )   **ORDER GRANTING MOTION**
9   Class of similarly situated         )   **FOR CLASS CERTIFICATION,**
    Washington residents,               )   *INTER ALIA*
10                                      )
                 Plaintiffs,            )
11                                      )
              v.                        )
12                                      )
    FREEDOM DEBT RELIEF, LLC,           )
13  LLC, a Delaware limited liability   )
    company, et al.,                    )
14                                      )
15                                      )
                 Defendants.            )
16  _____  )

17         **BEFORE THE COURT** are the Plaintiffs' Motion For Class Certification

18  (Ct. Rec. 35) and Defendants' Motion To Compel Arbitration And Dismiss (Ct.

19  Rec. 57).  These motions were heard with oral argument on March 16, 2010.

20  Darrell W. Scott, Esq., argued for Plaintiffs.  Sally Gustafson Garratt, Esq., argued

21  for Defendants.   Also before the court is Plaintiffs' Motion To Strike Exhibits

22  Attached To The Declaration Of Sally Gustafson Garratt (Ct. Rec. 74).  That

23  motion has been considered without oral argument.

24

25  **I.  BACKGROUND**

26         This is a diversity class action commenced by Plaintiffs against the

27

28

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   1**

Defendants[1], alleging Defendants have violated Washington's Debt Adjusting statute, RCW Chapter 18.28, and/or aided and abetted a violation of the same, and that these violations constitute a violation of Washington's Consumer Protection Act (CPA), RCW Chapter 19.86.   Defendant Freedom Debt Relief, LLC, ("FDR") is a company which offers "debt reduction services" to clients and "negotiates settlement terms with a client's creditor."  Defendant Freedom Financial Network ("FFN") is the parent company of FDR.  As discussed in the court's "Order Denying Motions To Compel Arbitration, *Inter Alia*" in the related case of *Carlsen v. Global Client Solutions*, CV-09-246-LRS (Ct. Rec. 40), Global Client Solutions, LLC (GCS), is in the business of receiving funds for the purpose of distributing those funds among creditors in payment or partial payment of obligations of debtors, including the Plaintiffs.  GCS, in partnership with Rocky Mountain Bank and Trust (RMBT), maintains and manages debt settlement accounts that are part of "debt reduction services" offered by companies such as FDR.

Plaintiffs' Second Amended Complaint in the captioned matter alleges that class members, including named Plaintiffs (Carlsens and Hulse) executed a standardized "Debt Reduction Agreement" with FDR which provided for a total fee that exceeded fifteen percent (15%) of the total debt listed on the contract, provided for an initial fee exceeding $25, and provided for fees exceeding 15% of the individual payments made by each class member, all in violation of RCW

---

[1] The federal Class Action Fairness Act (CAFA) expanded federal jurisdiction over putative and certified class actions where the matter in controversy exceeds $5,000,000, determined by aggregating the claims of the individual class members.  28 U.S.C. Section 1332(d)(1), (2), (6) and (8).  Complete diversity of parties is not required.  Diversity under the CAFA exists if any member of a class of plaintiffs is a citizen of a State different from any defendant.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   2**

1    18.28.080.

2

3    **II. DISCUSSION**

4         **A. Arbitration**

5         Defendants seek an order from the court enforcing the arbitration clauses in

6    the agreements between FDR and the Carlsens, and FDR and Hulse. Plaintiffs do

7    not dispute there was an agreement to arbitrate, but contend the agreement is not

8    enforceable.[2]

9         9 U.S.C. §2 of the Federal Arbitration Act ("FAA") provides in relevant part

10   that "an agreement in writing to submit to arbitration an existing controversy

11   arising out of . . . a contract, transaction, or refusal [to perform the same], shall be

12   valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in**

13   **equity for the revocation of any contract**." (Emphasis added). Whether an

14   arbitration agreement is enforceable under the FAA is generally determined by

15   reference to common-law principles of general applicability. *Southland Corp. v.*

16   *Keating*, 465 U.S. 1, 19-20, 104 S.Ct. 852 (1984).

17        While the issue of unconscionability of a contract or clause of a contract is a

18   question of law for the court, the decision is one based on the factual circumstances

19   surrounding the transaction in question. *Tjart v. Smith Barney, Inc.*, 107 Wn.App.

20   885, 898, 28 P.3d 823 (2001). The burden of proving that a contract or contract

21   clause is unconscionable rests upon the party attacking it. *Id*. Washington

22   recognizes two types of unconscionability. Substantive unconscionability

23   "involves those cases where a clause or term in the contract is alleged to be one-

24

25   ─────────────────

26        [2] In *Carlsen v. Global Client Solutions* CV-09-246-LRS, the court found the
     Carlsens and Pophams did not agree to arbitrate their dispute with GCS and
27   RMBT, and therefore did not reach the issue of enforceability.

28

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   3**

sided or overly harsh . . . ."  *Id.* quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975).  Procedural unconscionability is the lack of a meaningful choice, considering all of the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print.  *Id.*

The agreement the Carlsens entered into with FDR contains an arbitration clause which is different from the arbitration clause contained in the agreement between Hulse and FDR.  The Hulse agreement constitutes the later version of the agreement.

Paragraph 9 in the Carlsen agreement, entitled "Arbitration of Dispute," states:

> IN THE EVENT OF ANY DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PARTIES AGREE TO SUBMIT THAT DISPUTE TO BINDING ARBITRATION UNDER THE AUSPICES OF THE AMERICAN ARBITRATION ASSOCIATION (AAA).  VENUE FOR SUCH ARBITRATION WILL BE IN SAN FRANCISCO, CA.  BINDING ARBITRATION MEANS THAT BOTH PARTIES GIVE UP THE RIGHT TO TRIAL BY JURY.  IT ALSO MEANS THAT BOTH PARTIES GIVE UP THE RIGHT TO APPEAL FROM THE ARBITRATOR'S RULING EXCEPT FOR A NARROW RANGE OF ISSUES THAT ARE APPEALABLE UNDER CALIFORNIA LAW.  IT ALSO MEANS THAT DISCOVERY MAY BE SEVERELY LIMITED BY THE ARBITRATOR.

(Text in Capital Letters).

The Carlsen agreement also contains a Paragraph 8 entitled "Governing Law; Severability:", which states:

> This Agreement is governed by the laws of the State of California, without regard to the conflict of law rules of that state.  If any provision of this Agreement is held to be unenforceable, the remainder of this Agreement shall remain in full force and effect.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   4**

The Hulse agreement contains the identical "Governing Law; Severability" clause at Paragraph 8.

The arbitration clause of the Hulse agreement is found at Paragraph 9 and it states:

> THE EVENT OF ANY CONTROVERSY, CLAIM OR DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE TERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE DETERMINED BY ARBITRATION IN SAN FRANCISCO, CALIFORNIA OR IN THE COUNTY IN WHICH THE CONSUMER RESIDES, IN ACCORDANCE WITH THE LAWS OF STATE OF CALIFORNIA FOR AGREEMENTS TO BE MADE IN AND TO BE PERFORMED IN CALIFORNIA.  THE PARTIES AGREE THE ARBITRATION SHALL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS RULES AND PROCEDURES AND AN ARBITRATOR SHALL BE SELECTED BY THE AAA. . . .  THE PARTIES AGREE THAT EITHER PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  FURTHER, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF REPRESENTATIVE OR CLASS PROCEEDINGS.  THE PARTIES SHALL SHARE THE COST OF ARBITRATION, INCLUDING ATTORNEY'S FEES, EQUALLY.  IF THE CONSUMER['S SHARE OF THE COST IS GREATER THAN $1,000 (ONE-THOUSAND DOLLARS), THE COMPANY WILL PAY THE CONSUMER['S SHARE OF THE COSTS IN EXCESS OF THAT AMOUNT. . . .

(Text in Capital Letters).

The Plaintiffs contend the arbitration clauses are substantively unconscionable.  According to Plaintiffs, the Hulse agreement is substantively unconscionable because it attempts to evade consumer protection laws by depriving consumers of class action procedures, whereas the Carlsen agreement is substantively unconscionable because it deprives indebted consumers of

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION -   5**

meaningful opportunity for redress by requiring that claims be pursued in San Francisco under California law.

Defendants say they are willing to arbitrate the claims of each Plaintiff in the county where each Plaintiff resides and to not enforce the "Choice of Law" clause.[3] In other words, Defendants are willing to forego San Francisco as the venue for arbitration and have Washington law apply to the arbitration, including the Debt Adjusting statute and the Consumer Protection Act.  Defendants assert the severability clauses in the agreements permit the court to sever the venue and choice of law provisions.  Defendants' willingness to forego enforcement of these provisions is understandable given that this court finds it would be substantively unconscionable to require financially-strapped Washington citizens to travel to San Francisco to arbitrate a dispute without the benefit of Washington's Consumer Protection Act.

Defendants maintain the class action waiver in the Hulse agreement is not substantively unconscionable and they assert that both the Carlsens and Hulse should proceed to arbitration of their individual claims.  The Carlsen agreement, unlike the Hulse agreement, does not contain a class action waiver and is silent on

_____

[3] Arguably, the Hulse agreement dictates this considering its language that "arbitration [shall be] in San Francisco, California **or in the county in which the consumer resides**, in accordance with the laws of the State of California **for agreements to be made in and performed in California**."  (Emphasis added). Hulse resides in Grant County in the State of Washington and her agreement with FDR was not made in or to be performed in California.   One could speculate that the venue and choice of law provisions in the later Hulse agreement, as compared to the earlier Carlsen agreement, were motivated by concerns over the enforceability of the provisions in the earlier Carlsen agreement which leave no doubt that venue for arbitration will be in San Francisco and that California law will apply .

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   6**

the issue of classwide arbitration. Prior to 2003, the general consensus expressed in federal case law was that classwide arbitration was legally impermissible unless specifically permitted by the pertinent arbitration clause. See *Champ v. Siegel Trading Co. Inc.*, 55 F.3d 269, 275 (7th Cir. 1995)(where the parties are bound by an arbitration agreement and the agreement is silent on class action procedures, a federal court may not order class action treatment). In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402 (2003), the U.S. Supreme Court held that because an arbitration clause did not specifically preclude classwide arbitration, the Federal Arbitration Act did not foreclose classwide arbitration, and whether arbitration was permissible was a matter of state-law contract interpretation. Furthermore, the Court held it was for the arbitrator to decide if there should be class certification and therefore, classwide arbitration. *Id*. at 453. Under *Green Tree*, the presumption would be that classwide arbitration is not foreclosed by the arbitration clause in the Carlsen agreement and, assuming the clause is otherwise enforceable, an arbitrator should determine whether the clause allows for classwide arbitration.

The prohibition of classwide arbitration found in the arbitration clause in the Hulse agreement is substantively unconscionable under Washington law. In *Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000 (2007), the plaintiffs brought a class action against the defendant alleging it had overcharged consumers by unlawfully adding roaming charges and hidden charges. The Washington Supreme Court held the class action waiver in the arbitration clause of the standard subscriber contract for cellular telephone service, which waived both class action litigation and class action arbitration, violated Washington state public policy and therefore, was substantively unconscionable. The court concluded the arbitration clause was unenforceable and since the clause itself provided that if any part of the same was found unenforceable, the entire clause was void and there was no basis

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   7**

for compelling arbitration. *Id.* at 847.

The state supreme court explained why the class action waiver was substantively unconscionable:

> Class actions are vital where the damage to any individual consumer is nominal, and that vital piece is exactly what the plaintiffs claim the class action waiver before us seeks to eviscerate.
>
> Thus, we conclude that without class actions, consumers would have far less ability to vindicate the CPA. [Citation omitted]. Again, the CPA contemplates that individual consumers will act as "private attorneys general," harnessing individual interests in order to promote the public good. [Citation omitted]. **But by mandating that claims be pursued only on an individual basis, the class arbitration waiver undermines the legislature's intent that individual consumers act as private attorneys general by dramatically decreasing the possibility that they will be able to bring meritorious suits.**
>
> Without class action suits the public's ability to perform this function is drastically diminished. We agree with plaintiffs and the Washington attorney general and conclude the class action waiver clause before us is an unconscionable violation of this State's policy to "protect the pubic and foster fair and honest competition," RCW 19.86.920, because it drastically forestalls attempts to vindicate consumer rights. To the extent that this clause prevents CPA cases, it is substantively unconscionable.

*Id.* at 853-54 (emphasis added).

The court found there was an additional consideration in deeming the clause substantively unconscionable:

> Of course, on its face, the class action waiver does not exculpate Cingular from anything; it merely channels dispute resolution into individual arbitration proceedings or small claims court. But, in effect, this exculpates Cingular from legal liability for any wrong where the cost of pursuit outweighs the potential amount of recovery. . . .
>
> In such cases, the ability to proceed as a class transforms a merely theoretical possible remedy into a real one. [Citation omitted]. It is often the only meaningful type of redress available for small but widespread injuries. [Citations omitted]. Without it, many consumers may not even realize that they have a claim. [Citations omitted]. The class action provides a mechanism to alert them to this fact. Second, again, claims as

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   8**

> small as those in this case are impracticable to pursue on an individual basis even in small claims court, and particularly in arbitration. Shifting the cost of arbitration to Cingular does not seem likely to make it worth the time, energy, and stress to pursue such individually small claims.[4]

*Id*. at 855-56.

The state supreme court rejected Cingular's argument that the Federal Arbitration Act required the court to enforce the class action waiver. In doing so, it found that Congress only required that arbitration clauses be put on the same footing as other contracts. *Id*. at 858. It observed that:

> Class action waivers have very little to do with arbitration. Clauses that eliminate causes of action, eliminate categories of damages, or otherwise strip away a party's right to vindicate a wrong do not change their character merely because they are found within a clause labeled "Arbitration." At least, based on the briefing before us, we see no reason why the purposes of favoring individual arbitration would not equally favor class-wide arbitration. [Citation omitted].

*Id*. at 858.

In the subsequent case of *McKee v. AT&T Corp.*, 164 Wn.2d 372, 191 P.3d 845 (2008), the Washington Supreme Court declared unconscionable a choice of law provision in a "Consumer Services Agreement" which designated New York law as controlling. The court found "the choice of New York law in this case is unconscionable . . . because it conflicts with Washington's fundamental public policy favoring the availability of class-based relief for small consumer claims." *Id*. at 386. The court held that "Washington's strong Consumer Protection Act policy favoring class adjudication of small-dollar claims is a 'fundamental policy' .

---

[4] Here, FDR does not agree to bear all of the costs of arbitration. In the Hulse agreement, FDR does agree to cover the consumer's share of costs in excess of $1,000. As discussed *infra*, that is insufficient to save the class action waiver from being substantively unconscionable. The Carlsen agreement does not say anything specific about arbitration costs and the assumption would be that FDR and the client share the arbitration costs equally.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION - 9**

1  . . ." *Id.* To no surprise, the court also found substantively unconscionable the

2  provision within the "Dispute Resolution" section of the agreement that prohibited

3  classwide arbitration. *Id.* at 397. It emphasized, however, that class action waiver

4  has nothing to do with a valid agreement to arbitrate because class actions are often

5  arbitrated and promote the prime objective of an agreement to arbitrate which is

6  streamlined proceedings and expeditious results. *Id.* at 395.

7  In *McKee*, the state supreme court affirmed the trial judge's decision that the

8  unconscionable terms within the "Dispute Resolution" section of the agreement

9  (waiving class actions, requiring confidentiality, shortening the limitations period,

10  and limiting attorney's fees) could not be severed because they "permeate the

11  entire arbitration agreement." *Id.* at 402. AT&T requested the unconscionable

12  provisions from the "Dispute Resolution" section be stricken and that the balance

13  thereof be enforced, but the court declined to do so, noting that "when

14  unconscionable provisions so permeate an agreement, we strike the entire section

15  or contract." *Id.* The court found that severance of the unconscionable terms

16  which tainted the entire "Dispute Resolution" section would essentially require the

17  court to rewrite the dispute resolution agreement. *Id.* at 403. According to the

18  court:

19  
20  > Permitting severability as requested by AT&T in the face of
a contract that is permeated with unconscionability only encourages
21  those who draft contracts of adhesion to overreach. If the worst
that can happen is the offensive provisions are severed and the
balance enforced, the dominant party has nothing to lose by
22  inserting one-sided, unconscionable provisions.

23  *Id.*

24  The arbitration clause in the Hulse agreement provides that if the client's

25  50% share of the costs of arbitration is greater than $1,000, FDR will pay the

26  client's share in excess of $1,000. That is an insufficient reason for the court to not

27  find the class action waiver unconscionable. Defendants' argument is that this

28  

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   10**

provision makes individual arbitrations appropriate in lieu of classwide arbitration. The figures cited by Plaintiffs, however, do not bear this out: $1,000 exceeds the debt adjuster fees at issue for more than 30% of those Washington consumers who terminated FDR's services, and represents more than 50% of the debt adjuster fees for 70% of that same group; and more than 60% of those who completed FDR's program would have to incur costs exceeding 30% of the total fees they paid in order to pursue a claim to individually arbitrate their claims. Thus, one cannot conclude that the prospect of having FDR pay the client's share of the arbitration costs in excess of $1,000 would provide adequate incentive for the majority of clients to arbitrate their individual small-value claims.

In *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007), the defendant argued its arbitration clause did not deter customers from arbitrating individual small-value claims because per the clause, defendant agreed to pay the full cost of arbitration, and plaintiffs who received awards equal to or greater than their demands would receive attorney's fees. The Ninth Circuit rejected this argument and concluded that under California law, the class action waiver in the arbitration clause was unconscionable. The Ninth Circuit noted the concern of the California courts is that "when the potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers." *Id.* at 986, citing *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148, 158-62, 30 Cal. Rptr. 3d 76, 113 P.3d 1100 (Cal. 2005) (emphasis in text). The California courts did not suggest a waiver is unconscionable only when or because a plaintiff in arbitration may experience a net loss, including attorneys' fees and costs. *Id.*

In the case before this court, Plaintiffs make the same point: "aggregation of Washington consumer's claims through class litigation [or arbitration] entirely

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   11**

eliminates barriers to prosecution of consumer's claims because litigation [or arbitration] costs are advanced by class counsel, incurred by consumers only if Class members prove successful, and owing to economies of class litigation, would be a small fraction of those incurred, were the consumers to proceed individually." The Carlsens and Hulse are obviously not the only Washington clients of FDR and furthermore, while there are perhaps some clients who paid enough in fees to FDR that they would not be economically deterred from pursuing individual arbitration against FDR, this is not the only consideration.  Without class litigation or arbitration, companies like FDR have little difficulty with arbitration of individual small-value claims.  It is a different matter, however, when such companies are faced with the prospect of aggregate liability through class litigation or arbitration.

The forum selection and choice of law provisions in the arbitration clauses contained in the Carlsen and Hulse agreements, and the class action waiver provision in the arbitration clause in the Hulse agreement, are substantively unconscionable under Washington law.  Despite the willingness of the Defendants to forego enforcement of the venue and choice of law provisions, and despite the existence of the severability clauses in the agreements, the court finds the unconscionable provisions so permeate the arbitration clauses and the agreements as a whole that they cannot and should not be severed for the reasoning provided in *McKee*, and that arbitration (individual or classwide) should not be compelled. The arbitration and governing law clauses in the Carlsen and Hulse agreements are stricken in their entirety.

//

//

**B.  Class Certification**

Plaintiffs seek an order certifying this matter as a class action designating a class composed of all Washington residents who have executed a Debt Reduction

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   12**

Agreement with FDR and/or FFN, appointing named Plaintiffs (Carlsens and Hulse) as class representatives, designating Mr. Scott as class counsel, and providing for submission and approval of appropriate and timely notice to class members.

Plaintiffs ask that the class be certified pursuant to Fed. R. Civ. P. 23(b)(3) on the basis of a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In addition to making that finding in order to certify a class, the court must also determine that certain prerequisites listed in Rule 23(a) have been met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants seemingly do not challenge that the first two prerequisites of Rule 23(a) are met, those being "numerosity"[5] and "commonality."  As discussed below, the questions of law and fact present in the claims of each putative class member are not only "common," but pursuant to Rule 23(b)(3), "predominate" over questions affecting individual members in the putative class and, on balance, a class action is superior to other methods for adjudicating the controversy.  And because of this, the "typicality" and "adequacy" prerequisites of Rule 23(a) are also satisfied.

---

[5] Defendants do not dispute that they have continuously engaged in business since 2003 and that over 1,000 Washington consumers have contracted with Defendants.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   13**

Defendants argue they are not "debt adjusters" as defined in Washington's Debt Adjusting statute, RCW 18.28.010, and concede this is a question of law common to the claims of all putative class members. Nevertheless, Defendants contend class certification is inappropriate because "[e]ach Washington client has had a different experience with the program" and "[a]s a result, the Court will be faced with an endless variety of facts and circumstances for each individual regarding whether his or her situation meets the requirements for sustaining this action."

This action is about the Defendants, pursuant to a standardized debt reduction agreement, allegedly charging each putative class member fees in excess of those specified in RCW 18.28.080. It is alleged the fee structure was the same in each individual case. The common question of fact is simply whether the fees charged and collected were in violation of the statute, or not. If they were excessive in violation of RCW 18.28.080, a standard remedy is prescribed in RCW 18.28.090: "the debt adjuster's contract with the debtor shall be void and the debt adjuster shall return to the debtor the amount of all payments received from the debtor or on the debtor's behalf and not distributed to creditors."

Defendants suggest some putative class members may not have been injured, and that those who claim they were injured, may not be able to show the cause of their injury was related to Defendants' actions. Being charged a fee in excess of that allowed in RCW 18.28.080 constitutes "injury" *per se*. RCW 18.28.080 amounts to a recognition that anything charged and collected above the specified fee limits constitutes injury to Washington consumers. By definition, an individual is injured if he is charged and pays too much in violation of the statute. Per RCW 18.28.185, a violation of RCW 18.28.080 constitutes an unfair and deceptive act or practice in the conduct of trade or commerce under the Consumer Protection Act (RCW Chapter 19.86). A violation of RCW 18.28.080 is a *per se* violation of the

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   14**

Consumer Protection Act.  All of the elements of a CPA violation are satisfied because RCW 18.28.080 was enacted to protect the public from excessive fees. Indeed, RCW 18.28.190 makes it a criminal misdemeanor to violate any provision of the Debt Adjusting statute.  A violation of RCW 18.28.080 affects the public interest, injures the party who was charged the excessive fee, and obviously the charging of the excessive fee causes the injury.

Defendants assert that "88 Washington clients have completed the FDR program and every one of them has saved more money from their reduced debt than they have paid in fees to FDR and benefited significantly from their enrollment in the program."  That, however, is not the relevant question.  The relevant question is whether those 88 clients were charged and paid fees in excess of the limits specified in RCW 18.28.080.  If so, they were injured and are entitled to the remedy specified in RCW 18.28.090.

It is true that Plaintiffs' Second Amended Complaint alleges some "individual claims" that are unique to the Carlsens.  (See Paragraphs 67-89 of Second Amended Complaint).  These individual claims are for alleged fraudulent misrepresentations made by Defendants to the Carlsens, and the claims relate to how Defendants performed with regard to certain debts owed by the Carlsens. Plaintiffs propose these individual claims be bifurcated from the class proceeding altogether, deferred for resolution until the class proceeding is completed, referred for resolution on a parallel track involving other proceedings acceptable to the parties, or litigated along side the class claims.  The existence of these individual claims does not diminish the fact that common questions of law (are Defendants "debt adjusters" as defined in RCW 18.28?) and fact (did Defendants collect fees from their clients in excess of the limits specified in RCW 18.28.080 pursuant to standardized agreements?) "predominate" in this matter so as to justify class certification.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   15**

Defendants assert the contracts with their clients have "varied substantially over the years" and that these differences defeat "predominance." Significant, however, is that Defendants do not assert the fee structure of these contracts varied substantially in such a fashion as to eliminate "predominance" of a common question whether fees charged and collected were in violation of RCW 18.28.080. There appears to be no dispute that the debt reduction agreements were standardized in regard to fees charged and collected.

It is not enough that common questions "predominate." There must also be a finding that a class action is "superior" to individual lawsuits for resolving the dispute. Defendants contend a class action is not "superior" to other available methods of adjudication because "[f]or those who are displeased with some aspect of the program, they may litigate their claims individually." Defendants assert the Carlsens and Hulse acknowledge as much "by asking the Court to litigate their individual claims separate and apart from any class litigation." The Carlsens and Hulse have now made clear that they believe their summary judgment motion should be deferred pending resolution of the class certification issue and the court has advised the parties this is how it intends to proceed.

Defendants contend the availability of individualized claim resolution is enhanced by the existence of contractual arbitration, noting that all FDR clients, including the Carlsens and Hulse, signed contracts containing arbitration clauses. The court has found, however, that these clause are not enforceable because of substantively unconscionable provisions contained therein.

Defendants assert that even if the arbitration clauses are unenforceable, the amount of fees paid by the clients is such that the clients could "easily" bring actions for relief in small claims court ($5,000 limit) or (state) district court

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   16**

($50,000 limit).[6]  As Plaintiffs point out, there are likely a significant number of FDR clients who are unaware they might have claims related to the fees charged and collected from them.  According to Plaintiffs' figures, undisputed by Defendants, the vast majority of class members have claims valued at $3,000 or less as measured by the total fees paid, with 45% having claims involving fees of $1,999 or less, and only two having claims involving fees exceeding $15,000. There is not a likelihood of large individual recoveries.  These are "small-value" (also referred to as "negative value") individual claims.

The purposes of a class action are to avoid a multiplicity of actions and to enable persons to assert small claims that would not be litigated individually because the costs would far outweigh any recovery.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349, 103 S.Ct. 2392 (1983).  Lawyers are not allowed in Washington small claims courts and certainly, an individual does not have to hire an attorney and can proceed *pro se* in state district court, thereby avoiding payment of attorney fees.  Cost, however, is not the only issue here.  These are not simple disputes which can be easily presented by *pro se* litigants.  Resolution of the disputes involves interpretation of Washington's Debt Adjusting statute (i.e., is FDR a "debt adjuster") for which there is a complete absence of relevant case law and legislative history.  In this case, and the related case of *Carlsen v. Global Client Solutions*, CV-09-246-LRS, this court is likely to certify questions of first impression to the state supreme court for resolution.  In sum, *pro se* litigants would

_____

[6] Litigation in state court is discussed as an option because if there is no class certification and no federal diversity subject matter jurisdiction under the Class Action Fairness Act (CAFA), it is doubtful there is traditional diversity jurisdiction (complete diversity between Plaintiffs and Defendants and/or no individual claim exceeding $75,000 jurisdictional amount), and there certainly is no federal question jurisdiction.

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   17**

be at a decided disadvantage in trying to present their cases in state court, and the cost of hiring an attorney would be prohibitive relative to the small value of the claims. Indeed, the likelihood of finding an attorney to take on an individual claim would be diminished because of the small value of the claim and the prospect of a small recovery.

In *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 837, 161 P.3d 1016 (2007), the Washington Supreme Court found unenforceable a forum selection clause because it precluded class actions for small-value Consumer Protection Act (CPA) claims and there was no feasible alternative for seeking relief on such claims. According to the court:

> The individual consumer action to enforce RCW 19.86.020 and vindicate the public interest is . . . a significant aspect of a dual enforcement scheme under the CPA, which provides for individual private actions in addition to enforcement actions brought by the attorney general. **But in some circumstances, the costs <u>and inconvenience</u> of suit may be too great for individual actions, <u>even in small claims court</u>**. We agree, therefore, that class suits are an important tool for carrying out the dual enforcement scheme of the CPA. Individual claims may be so small that it otherwise would be impracticable to bring them; a class action may be the only means that the public interest may be vindicated.

160 Wn.2d at 837 (emphasis added). Per RCW 18.28.185, a violation of Washington's Debt Adjusting statute constitutes a *per se* violation of the CPA.

A class action is a "superior" method for resolving individual claims here. None of the individual claims are of significant value and, when viewed objectively, the absence of a class action would likely deter individual actions. *Dix*, 160 Wn.2d at 841.

The "typicality" requirement of Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. In practice, the "commonality" and "typicality" requirements of Rule 23(a) tend to merge as both serve as a guideposts for determining whether maintenance of a

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   18**

class action is economical and whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364 n. 13 (1982). The claims of the purported class representatives need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 156. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

The Carlsens and Hulse have claims which are identical to the claims of other class members, those being the claims which allege FDR charged and collected fees in excess of the limits specified in RCW 18.28.080 pursuant to standardized agreements it had with its clients. As discussed above, the Carlsens are also asserting some unique individual claims for fraud resulting in injury unique to them, but the "typicality" requirement remains satisfied by virtue of the Carlsens (and Hulse) asserting claims identical to other class members alleging FDR charged and collected fees in excess of the limits specified in Washington's Debt Adjusting statute.

Defendants contend the Carlsens and Hulse have not demonstrated they will fairly and adequately represent the class because they "have chosen to proceed individually, seeking summary judgment on liability for themselves prior to a determination on class certification." In doing so, Defendants assert the Carlsens and Hulse have put their own interests on a different footing from those of the putative class. As noted, hearing and resolution of the motion for summary judgment has been deferred pending resolution of the class certification motion.

The test for "adequacy" is whether: 1) the attorney representing the class is

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -   19**

qualified and competent; 2) the class representatives are not disqualified by interests antagonistic to the remainder of the class; and 3) the named plaintiffs must prosecute the action vigorously on behalf of the class. *In re Mego Fin'l Corp. Secur. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Defendants do not dispute that Mr. Scott is qualified and competent to represent the class. For the reasons already discussed, the Carlsens and Hulse do not have interests which are not antagonistic to the remainder of the class.

Plaintiffs have demonstrated that all of the prerequisites of Rule 23(a)-numerosity, commonality, typicality, and adequacy of representation- are met. Furthermore, Plaintiffs have established, pursuant to Rule 23(b)(3), that questions of law and fact common to the class "predominate" over questions affecting the individual members and, on balance, a class action is "superior" to other methods available for adjudicating the controversy.

**III.  CONCLUSION**

Defendants' Motion To Compel Arbitration And Dismiss (Ct. Rec. 57) is **DENIED**. Plaintiffs' Motion For Class Certification (Ct. Rec. 35) is **GRANTED**. Plaintiffs' Motion To Strike Exhibits Attached To The Declaration Of Sally Gustafson Garratt (Ct. Rec. 74) is **DENIED as moot** with respect to Plaintiffs' Motion For Class Certification, although the court will consider the motion with respect to Plaintiffs' Motion For Summary Judgment at the time that motion is heard.

The Fed. R. Civ. P. 23(b)(3) class is composed of all State of Washington residents who have executed a Debt Reduction Agreement with FDR and/or FFN. Named Plaintiffs, Chad M. Carlsen, Shasta L. Carlsen, and Barbara Hulse, are designated as representatives for the class. Darrell W. Scott, Esq., is appointed as class counsel pursuant to Fed. R. Civ. P. 23(g). The class claims, issues, or

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -    20**

defenses are as identified above.  Within ten (10) days from the date of this order, class counsel will serve and file a proposed "Notice" to class members for the court's review and approval.  This "Notice" will comply with the requirements of Fed. R. Civ. P. 23(c)(2)(B).  Defendants will have ten (10) days from service of the proposed "Notice" to serve and file any objections to the same.  Class counsel will have five (5) days from service of any objections to serve and file any reply to the same.

After notice is provided to the class members and following the expiration of the "opt-out" period, class counsel will re-note the Plaintiffs' Motion For Summary Judgment As To Consumer Protection Act Liability And Final Or Preliminary Injunctive Relief (Ct. Rec. 47).  Disposition of that motion is **STAYED** pending it being re-noted for hearing.[7]

Resolution of the individual claims of the Carlsens is deferred pending completion of the class proceeding.

//
//
//
//
//

**IT IS SO ORDERED.**  The District Court Executive is directed to

---

[7] The court will consider whether questions should be certified to the state supreme court, including whether Defendants are "debt adjusters" subject to Washington's Debt Adjusting statute.  If the parties agree that is an appropriate course of action and can agree on the questions to be certified, the process can be expedited and it may be possible to consolidate presentation of those questions with the questions anticipated to be presented to the state supreme court in *Carlsen v. Global Client Solutions*, CV-09-246-LRS.

**ORDER GRANTING MOTION**
**FOR CLASS CERTIFICATION -   21**

forward copies of this order to counsel of record.

     **DATED** this 26<u>th</u> day of March, 2010.


                            ***S/ Lonny R. Suko***
                                  LONNY R. SUKO
              Chief United States District Court Judge

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION -    22**